# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs at Knoxville December 13, 2011

## STATE OF TENNESSEE v. CORNELIUS O. WILLIAMS

**Appeal from the Circuit Court for Montgomery County**
**No. 40801281      Michael R. Jones, Judge**

---

**No. M2011-01169-CCA-R3-CD - Filed June 8, 2012**

---

Appellant, Cornelius O. Williams, appeals the trial court's denial of his motion to withdraw his guilty pleas. Appellant pled guilty to one count of rape of a child, two counts of especially aggravated sexual exploitation of a minor, and one count of aggravated sexual battery. He received an effective thirty-three year sentence to be served in confinement. The State raises an issue regarding appellant's untimely notice of appeal. After considering the merits, we hold that the trial court properly denied appellant's motion to withdraw his guilty pleas and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J., joined.

James Kevin Cartwright (on appeal); Roger Eric Nell, District Public Defender; and Crystal L. Myers, Assistant District Public Defender (at trial), Clarksville, Tennessee, for the appellant, Cornelius O. Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Robert J. Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History

On October 6, 2008, a Montgomery County Grand Jury returned a fourteen-count indictment against appellant, charging him with two counts of rape of a child, six counts of especially aggravated sexual exploitation of a minor, and six counts of sexual exploitation of a minor. On August 24, 2009, appellant appeared in court to stand trial on the indictment.

As a result of plea negotiations, appellant pled guilty to one count of rape of a child, one count of aggravated sexual battery, and two counts of especially aggravated sexual exploitation of a minor. The plea agreement provided that the sentences for rape of a child and aggravated sexual battery would run concurrently with each other, and the sentences for especially aggravated sexual exploitation would run concurrently with each other. The parties left to the trial court's discretion whether the latter counts would run consecutively to or concurrently with the former counts. After a full colloquy, the trial court accepted appellant's pleas of guilty to four counts of the indictment. Upon agreement of the parties, the trial court dismissed the remaining counts. The judgments were entered on October 7, 2009.

Appellant filed a motion to withdraw his guilty pleas and to appoint new counsel on October 29, 2009. The court appointed new counsel in November of 2009. On April 1, 2010, the trial court held a hearing on appellant's motion to set aside the guilty pleas. At the conclusion of the hearing, the trial court stated it would issue a ruling very shortly. The court issued its opinion denying the motion and entered an order on April 13, 2010. After more than a year had passed, appellant's counsel and the assistant district attorney general presented the trial court with an agreed order. The new agreed order set forth that appellant never received a copy of the trial court's order overruling the motion to set aside the guilty pleas. The agreed order also stated that apparent confusion in the clerk's office regarding a pending post-conviction matter and the original criminal matter led counsel to believe that the trial court had not issued a ruling. The parties agreed to set aside the April 13, 2010 order and re-enter the order on May 16, 2011, so appellant could appeal. Appellant filed a notice of appeal on May 20, 2011.

On appeal, appellant contends the trial court should have allowed him to withdraw his guilty pleas to correct a manifest injustice. In support of his contention, appellant claims that he was suicidal, having attempted to take his own life the same day that he entered the guilty pleas; that he was diagnosed with depression and was prescribed antidepressants that he had not taken that day; and that neither his counsel nor the trial court informed him that his guilty pleas would entail admission of the act of penetration, which he denied having committed.

Initially, the State asserts that this court should dismiss the appeal because the appellant did not timely file his notice of appeal. Thus, this appeal involves determination of two issues: first, whether this court should waive the timely filing of the notice of appeal in the interest of justice, and second, whether the trial court abused its discretion in denying appellant's motion to withdraw his guilty pleas.

## II. Facts

This trial court set this case for trial on August 24, 2009. That morning, the assistant district public defender and the assistant district attorney general announced that the parties

had reached a settlement in the case. Defense counsel recited the details of the plea agreement to the court. The assistant district attorney general stated the facts of the case as follows:

On May 28th, 2008, Ginger Fitting of the Clarksville Police Department [ ] [was] contacted by Lisa Dupruis (phonetic) at Our Kids[.] [Ms. Dupruis stated] that she received a phone call from the Chaplain on Ft. Campbell [ ] that he had two individuals in this office that had a VHS tape. One individual was [*] the aunt of [Child One][1], and one was the mother of [Child One] and [*]. They had discovered a VHS tape among – at Mr. Williams' residence among his possessions. They viewed the VHS tape, titled "Storytelling," and that tape depicted Mr. Williams in the basement of the Defendant's address committing the sex acts as indicted upon [Child One] and [Child Two].

Ginger Fitting contacted the military and they began an investigation – Mr. Williams, at this time had been deployed to Iraq. Special Agent James Carson and Special Agent Shelley Cave (phonetic), made contact with Mr. Williams there, interviewed him, searched his individual housing unit, found forty-one eight millimeter cassette tapes, in particular, number thirty-five that was in his possession there, was the same footage as [aunt] and [mother] discovered back in Clarksville.

Among his possessions, were three VHS tapes; one, entitled "Wrestlmania 20" [sic] contained on that VHS tape was the same footage as the eight millimeter tape number 35 and the storytelling VHS tape that was found in Clarksville.

When Special Agent Carson interviewed Staff Sergeant Williams specifically about the narrative that he was provided about the contents of the VHS tape contained here in Clarksville, he admitted to being in the basement with [Child One] and [Child Two] wearing a condom, having the girls position themselves over the arm of the couch and he got up behind them and they were -- had only a t-shirt on and their bottom was exposed. Both children in the video take turns in this position. [Child One] is here, she is now fourteen and will testify that this took place probably when she was in the fifth grade, which is three years ago, making her definitely under thirteen years of age. She would testify that Mr. Williams penetrated her slightly in her anus.

---

[1] It is the policy of this court to protect the identity of minor children in cases involving sexual offenses. Child One shall be the designation assigned to the victim of the offenses alleged in Counts I and III of the indictment. Child Two shall be the designation assigned to the victim of the offenses alleged in Counts II and IV of the indictment. [*] indicates that the court has removed proper names of individuals who bear an identifying relationship to the minors.

The trial court conducted a plea colloquy, informing appellant of the charges against him, the factual basis for the charges, and range of punishment for each charge. The trial court informed appellant of his right to a trial by jury; the State's burden of proof; his right to confront witnesses against him; his right to remain silent; his right to appeal; and his right to subpoena witnesses to testify on his behalf. The court emphasized to appellant that by entering into a plea agreement, appellant would waive a trial. Appellant answered that he understood all of the rights explained to him by the trial court. The trial court emphasized to appellant that one allegation of the indictment involved anal penetration. The court asked appellant if he was guilty of the act of child rape, to which the appellant responded affirmatively. Appellant further admitted his guilt as to all remaining counts contained in the plea agreement.

As set forth earlier, the judgments were entered on October 7, 2009. On October 29, 2009, appellant's trial counsel, an assistant district public defender, filed a motion to withdraw appellant's guilty pleas simultaneously with a motion to allow the district public defender's office to withdraw from the case. The trial court appointed new counsel for appellant in November of 2009. The trial court heard appellant's motion to withdraw his pleas on April 1, 2010. During the hearing, appellant testified that he was represented by counsel at the time he entered the guilty pleas. He further testified he and his attorney talked about the plea agreement before he entered his pleas. However, appellant then testified that he filed the motion to withdraw his pleas because he did not understand the charges against him and wanted to be sure he was not pleading guilty to a crime he did not commit. He stated that he believed he was pleading guilty to "sexual aggravated battery" and was unaware that he pled guilty to rape of a child. The appellant testified that his attorney advised him he was pleading to rape. Appellant then equivocated and said he was confused and did not understand. He stated that he had attempted to commit suicide the night before he entered the pleas, causing him to not fully understand the concepts discussed on the following day in court. Appellant testified that he attempted suicide because he "just didn't want to be here any more," and he had asked the jail psychiatrist for help with psychological problems. He said he had been taking medication for depression for two years and testified that he took his medicine the night before he entered his pleas. Appellant stated that he had written letters to his attorney telling her he was having suicidal thoughts. Although he testified that his attorney had no reaction whatsoever in court when he addressed his concerns with her, trial counsel testified that she acted on the letters he wrote to her by requesting that the jail place him in protective custody and on suicide watch. Regarding the factual allegations, appellant testified that there was no act of penetration, and he did not know why he admitted it. He further asserted that he would not have entered the pleas if he had known the pleas included an admission of penetration.

During cross-examination, appellant further emphasized that he was confused on the day he pled guilty. Despite his alleged confusion, appellant recalled the people he saw in the courtroom that morning. He recalled seeing Child One and recalled his attorney informing

-4-

him that Child One would testify that he penetrated her anally. He further recalled the portion of the plea colloquy in which the trial court advised him that penetration is an element of child rape. He admitted that he answered in court that he was, in fact, guilty of that conduct. Appellant acknowledged that he had information prior to entering the pleas regarding the videotape that would be played and that Child One would testify to the facts establishing the element of penetration.

Trial counsel testified that on the morning of the pleas, appellant arrived late from the jail. She learned that jail transport was late because appellant had attempted suicide that morning. Despite her initial concern, she did not move for a continuance at that time. She recognized that the State had flown witnesses in from Germany, and the chance of a continuance was very poor. She stated she did, however, inform the trial court about the suicide attempt. Trial counsel did not recall whether she made that statement on the record and did not recall whether the trial court made any further inquiries regarding appellant's competency.

Upon his arrival from jail, appellant changed clothes at the courthouse so that he would not be wearing his jail clothes at trial. According to trial counsel, appellant told her he was scared, and she reassured him that they were ready for trial. He told her that he did not want to go to trial. Trial counsel testified that following a bench discussion with the court and opposing counsel regarding preliminary matters, appellant again told her that he did not want to go to trial and that he wanted her to secure the plea agreement they previously discussed. Trial counsel recalled that she asked the court for a moment to discuss a possible plea agreement. She then left the courtroom to discuss the possibility of guilty pleas with the assistant district attorney general. They arrived at a tentative agreement for the assistant district attorney general to discuss with the victims and their families. Trial counsel testified that she also learned that Child One would testify that she understood the word "penetration" and that appellant had, indeed, penetrated her. Trial counsel testified that she informed appellant about the nature of Child One's testimony, and at that point, appellant decided that he would rather plead guilty than go to trial.

Trial counsel stated she visited appellant at the jail before the trial date. He also wrote letters to her. In their exchanges, trial counsel advised appellant that if the State offered a deal involving a sentence of twenty years, he should take it. She testified that appellant asked if she could try to get probation for him because he was essentially a first-time offender. In one letter to her, appellant told trial counsel that on the day he committed the offenses, he knew right from wrong. Appellant acknowledged in some of his letters that he knew the charges against him were very serious.

Trial counsel testified she reviewed appellant's military service and medical records in preparation for trial. She learned that appellant had served in the United States Army for eighteen years and that his service record did not indicate any psychiatric illness. The jail

medical records indicated that appellant suffered from depression. An entry in the records indicated that appellant claimed to have heard voices, and another entry indicated that appellant declined his medication on at least one occasion. Trial counsel testified she was also aware that he had attempted to take his own life on previous occasions. In spite of these concerns, trial counsel stated she believed appellant understood the criminal justice process. She testified that based on her interactions with appellant and the information available to her, she did not believe that a psychological evaluation was necessary.

In light of appellant's attempted suicide, trial counsel asked the court for time to talk with appellant before the trial began. She testified that she and appellant did not discuss the circumstances surrounding the attempted suicide. Appellant never indicated that he could not go to trial because of the suicide attempt. Trial counsel testified that appellant seemed fine and did not suffer any injuries from the attempt. She said he simply seemed scared. Trial counsel testified that at all times during the morning appellant entered his pleas, he appeared to understand her, and he effectively communicated with her. She said he answered questions appropriately and asked questions of her. She testified that appellant did not ask any questions or ask for clarification on any point during the time she explained the plea agreement to him. Trial counsel testified that appellant simply indicated that he did not want to go to trial because he did not want to listen to the witnesses' testimony.

## III. Analysis

### A. Notice of Appeal

We initially address the issue of whether this court should waive the timely filing of the notice of appeal in this case. Appellant correctly notes that filing the "notice of appeal" document itself is not jurisdictional in criminal matters. Tenn. R. App. P. 4(a). The requirement of filing said document may be waived in the interest of justice. *Id.* This court is the ruling authority that determines whether such a waiver is in the interest of justice. *Id.*

In *Smith v. State*, 873 S.W.2d 5, 6 (Tenn. Crim. App. 1993), appellant filed the notice of appeal five months after the final order, or four months late. This court waived the notice requirement because the appellant was not represented by counsel and "underlying issues of [the] case require[d] resolution in order to do substantial justice." *Id.* at 6. An appellant's allegations that counsel neglected to inform him of the trial court's dismissal of his post-conviction petition and of his right to appeal have also satisfied the "interest of justice" requirement of Rule 4(a) of the Tennessee Rules of Appellate Procedure. *Warren v. State*, 833 S.W.2d 101, 102 (Tenn. Crim. App. 1992).

The Advisory Commission Comment to Rule 4(a) is also instructive in deciding this issue. The comment reads, in part, "[t]he third sentence of this subdivision is intended to alleviate the problem that results if the appellant is unaware that a judgment has been entered

by the trial court." Tenn. R. App. P. 4(a), Advisory Comm'n Cmt. Appellant contends that the precise situation addressed by the advisory comment occurred in this case.

The rule is intended to ensure due process in criminal actions because fundamental interests such as life and liberty must be protected. This court has authority to waive an untimely notice of appeal if such waiver is required to afford a criminal appellant his opportunity for appellate review, and perhaps relief from punishment, in the interest of justice. However, the waiver exception must not be subject to general or automatic application. The appellant must show that the waiver should be granted in the interest of justice. Tenn R. App. P. 4(a).

"In determining whether waiver is appropriate, this Court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State v. Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, 2005 WL 3543415, at *1 (Tenn. Crim. App. Dec. 27, 2005) (internal citations omitted). We are constrained, under the specific facts of this case, to hold that, although the parties did not effectively confer jurisdiction upon the trial court to enter a binding order after it lost jurisdiction, in light of the parties' stipulated agreement regarding the underlying procedural history and appellant's purported failure to receive notification of the trial court's original order, appellant justifiably relied on his agreement with the State and the subsequent order of the trial court. As such, in the interest of justice, we waive the timely filing of the notice of appeal. Our holding today is specific to the facts of this case and should not be construed as approval of a waiver of the thirty-day time limit of Rule 4(a) of the Tennessee Rules of Appellate Procedure sought thirteen months after entry of a dispositive court order. *See* Tenn. R. App. P. 4(a).

## B. Motion to Withdraw Guilty Pleas

Appellant argues that the trial court erred in denying his motion to withdraw his guilty pleas. As grounds, appellant asserts that the plea colloquy was defective in that it failed to ascertain appellant's ability to understand and make knowing pleas; that trial counsel informed the court that appellant suffered from a mental imbalance, yet the trial court failed to make further inquiry into appellant's mental state; and that appellant would not have pled guilty to Count I if he had known that one of the elements of rape of a child included penetration.

A defendant's right to withdraw a guilty plea is governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure:

> (1)    Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

(2) After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

Appellant entered his guilty pleas on August 24, 2009, and the judgments were entered on October 7, 2009. Because appellant filed the motion to withdraw his guilty pleas on October 29, 2009, "after the sentence [was] imposed but before the judgment[s] [became] final," the more demanding standard, "to correct manifest injustice," applies to our review of this issue. *State v. Crowe*, 168 S.W.3d 731, 741 (Tenn. 2005); *see* Tenn. R. Crim. P. 32(f). "This standard is based 'upon practical considerations important to the proper administration of justice.'" *Crowe*, 168 S.W.3d at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). In analyzing the meaning of "manifest injustice," this court wrote:

> Rule 32(f) does not define "manifest injustice," however, courts have identified circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. Withdrawal to correct manifest injustice is warranted where: (1) the plea was entered through a misunderstanding as to its effect, or through fear or fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by *Brady v. Maryland*, and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered, and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

*State v. Virgil*, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008) (internal citations omitted). Appellant bears the burden of establishing that his plea should be withdrawn to correct a manifest injustice. *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995).

"A defendant does not have a unilateral right to withdraw a plea." *Crowe*, 168 S.W.3d at 740. *See also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (stating that once a defendant enters a guilty plea, he cannot later withdraw it as a matter of right). "[A] defendant's change of heart about pleading guilty or [his] dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." *Crowe*, 168 S.W.3d at 743 (citing *Turner*, 919 S.W.2d at 355). Whether a defendant should be allowed to withdraw his guilty plea is left to the sound discretion of the trial court, regardless of when the motion is filed. *Crowe*, 168 S.W.3d at 740; *Mellon*, 118 S.W.3d at 345-46. An appellate court will not disturb the trial court's ruling unless a clear abuse of discretion is evident on the face of the record. *Crowe*, 168 S.W.3d at 740; *Turner*, 919 S.W.2d at 355. A trial court abuses its discretion if the record fails to contain substantial evidence to support the trial court's conclusion. *Crowe*, 168 S.W.3d at 740; *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995).

A guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n. 5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Lane*, 316 S.W.3d at 562. Courts should consider the following factors when ascertaining the validity of a guilty plea: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id.* (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Tennessee Rules of Criminal Procedure Rule 11 sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A)   The nature of the charge to which the plea is offered;
>
> (B)   the maximum possible penalty and any mandatory minimum penalty;
>
> (C)   if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;
>
> (D)   the right to plead not guilty or, having already so pleaded, to persist in that plea;

(E)     the right to a jury trial;

(F)     the right to confront and cross-examine adverse witnesses;

(G)     the right to be protected from compelled self incrimination;

(H)     if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)     if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)     if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3). Tennessee case law has further refined the requirements of a plea colloquy to include informing a defendant and ensuring that he understands that different or additional punishment may result from his guilty plea due to prior convictions or other factors and that the resulting conviction may be used for enhancement purposes in any subsequent criminal actions. *Lane*, 315 S.W.3d at 564 (citing *Howell*, 185 S.W.3d at 331).

A thorough review of the record indicates that the trial court meticulously adhered to the mandates of Rule 11 of the Tennessee Rules of Criminal Procedure. The plea colloquy was thorough. The trial court paused at the appropriate points to obtain a verbal response from appellant when necessary. Appellant's answers were clear and concise, answering, "Yes, Your Honor," or "No, Your Honor," to the questions by the trial court. This record

lacks any indication whatsoever that appellant's pleas were not knowing, voluntary, and intelligent.

We next consider whether appellant's allegedly tenuous mental state impacted his ability to enter knowing, voluntary, and intelligent pleas. His responses during the plea colloquy indicated that he was fully cognizant of the proceedings. Trial counsel's testimony concerning appellant's mental state at the time he entered the guilty pleas also indicated that his mental state did not impact his ability to understand his pleas. Trial counsel advised the court of appellant's suicide attempt. In light of appellant's attempted suicide, his counsel asked the court for time to talk with appellant. She stated that appellant seemed fine and that he had not suffered any injuries from the attempt. Appellant never indicated that he could not go to trial because of his suicide attempt. He stated that he was scared and that he did not want to go to trial because he did not want to listen to the witnesses' testimony.

Notwithstanding appellant's attempted suicide at the jail, the record supports the trial court's finding that appellant's pleas were knowingly, voluntarily, and intelligently entered. His counsel believed that he was coherent and lucid. His answers on the record support her belief. Nothing in the record indicates that appellant's alleged "suicide attempt" was anything more than a last minute ploy to delay the inevitability of a trial. Appellant and his counsel discussed the terms of the plea agreement, the anticipated testimony of witnesses, and the contents of the videotape. Appellant was admittedly scared, and justifiably so. He was about to confront his accusers, little girls, who would publicly testify about the acts he had committed against them. He was about to view a videotape of himself performing sexual acts with these children. Faced with this reality, appellant initiated further plea negotiations on the morning of trial. We conclude that appellant made a knowing, voluntary, and intelligent decision to forgo the formalities of a trial and to accept a favorable plea agreement.

Finally, appellant asserts that had he known the elements of rape of a child included "anal penetration," he would not have pled guilty because he did not commit the act. In his brief, appellant states that the only time the trial court mentioned "anal penetration" was at the beginning of a long paragraph of the record, contending that the language was lost in the lengthy statement. The transcript clearly contradicts appellant's position. It is correct that at the beginning of the plea colloquy, as the trial court outlined the range of punishment for each of the offenses, the court referred to "anal penetration" two different times in a series of two long paragraphs. However, appellant fails to acknowledge that the trial court specifically asked, "Mr. Williams, Count One is an allegation of anal penetration of Child One who was less than thirteen years of age; are you, in fact, guilty of that child rape?" Appellant answered, "Yes, Your Honor." Appellant's argument that the elements of this offense were buried in a long paragraph or that appellant somehow failed to hear and understand that anal penetration is an element of the criminal offense fails in light of this record.

We hold that the totality of the record demonstrates that appellant's guilty pleas were knowing, voluntary, and intelligent.  Accordingly, we hold that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty pleas.

## III.  Conclusion

Based on our review of the record and foregoing authorities, we discern no error and affirm the judgment of the trial court.

_____

ROGER A. PAGE, JUDGE